# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACQUELINE HUCKO-HAAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 07 C 0495 |
| BOARD OF TRUSTEES OF ILLINOIS COMMUNITY COLLEGE DISTRICT NO. 508 d/b/a CITY COLLEGES OF CHICAGO | ) ) Judge Joan B. Gottschall ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Defendant Board of Trustees of Illinois Community College District No. 508 d/b/a/ City Colleges of Chicago ("City Colleges") have moved to dismiss plaintiff Jacqueline Hucko-Hass' ("Hucko-Haas") amended complaint alleging employment discrimination. Specifically, Hucko-Haas claims disparate treatment and impact discrimination by City Colleges in violation of the Americans with Disabilities Act of 1990 (the "ADA") (Counts I and II); failure by City Colleges to make reasonable accommodation in violation of the ADA (Count III); and retaliation in violation of the ADA (Count IV). City Colleges has moved to dismiss Counts I-III under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; and Count IV under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth below, City Colleges' motion to dismiss is denied.

1

**I. BACKGROUND**

In 1989, Hucko-Haas suffered a ruptured cerebral aneurysm, resulting in significant impairments and multiple disabilities, including impaired mobility and dexterity, as well as other neural impairments. Amend. Compl. ¶ 8. Hucko-Haas was subsequently employed as a tenure-track member of the faculty at Kennedy-King College ("Kennedy-King") (a campus of City Colleges), with the rank of assistant professor, beginning in 1996. Amend. Compl. ¶ 9. City Colleges' Board Rule 3.7 requires all employees, including members of the faculty, of City Colleges (including Kennedy-King), to reside within Chicago city limits. Amend. Compl. ¶ 13. Hucko-Haas, however, resides in her family home, which is located outside city limits, and she has allegedly incurred significant expenses in modifying the house to accommodate her disabilities. Amend. Compl. ¶ 14. While she was a member of the Kennedy-King faculty, Hucko-Haas requested, and was granted, a waiver of the Board Rule 3.7 residency requirement, in consideration of the expensive modifications made to her home. Amend. Compl. ¶¶ 15, 16.

In May 2001 Hucko-Haas was terminated as a member of the Kennedy-King faculty for allegedly failing to complete her tenure project in a timely manner. Amend. Compl. ¶ 17. Consequently, in February 2003, Hucko-Haas filed suit (the "prior suit") against City Colleges alleging employment discrimination under the ADA. Amend. Compl. ¶ 18; *Haas v. Bd. of Tr. of Cmty. Coll. Dist. No. 508*, No. 03 C 1152 (N.D. Ill. filed Feb. 14, 2003). The parties settled that suit, and under the terms of the settlement agreement (the "Agreement"), Hucko-Haas was reinstated as a first-year, tenure-track member of the faculty of City Colleges, but at its Truman College campus, which is

located at a greater distance from her home than Kennedy-King. Amend. Compl. ¶ 19. Additionally, the Agreement awarded Hucko-Haas $20,000 in damages and $58,000 in attorneys' fees and costs. Settlement Agreement ¶ 3. Further, City Colleges agreed to a one-year waiver of the Board Rule 3.7 residency requirement, commencing on her first year of re-employment. Amend. Compl. ¶ 20. Finally, the Agreement contained a waiver and release provision in which Hucko-Haas agreed to waive all "claims, demands, damages, grievances, causes of action or suits, including claims for attorneys' fees … arising from or in any way connected with any action or inaction by City Colleges including … her employment with City Colleges and the employment decisions referenced in [her lawsuit]." Settlement Agreement ¶ 5. The clause further stated that: "[T]his Agreement solves and subsumes all claims based on any conduct by City Colleges through the date of this [A]greement…." *Id.*

During the 2004-2005 academic year, Hucko-Haas allegedly made repeated requests that she be exempted from the Board Rule 3.7 residency requirement in accommodation of her disabilities. Amend. Compl. ¶ 21. Hucko-Haas contacted, at one time or another, Linda Ford ("Ford"); Dr. Marguerite Boyd ("Boyd"), President of Truman; Dr. Wayne Watson ("Watson"), Chancellor of City Colleges; James Tyree ("Tyree"), Chairman of the City Colleges Board of Trustees; and Gayle Shines ("Shines"), Inspector General for City Colleges. *Id.* Hucko-Haas claims that there were no responses to her inquiries. Amend. Compl. ¶¶ 22-25. Hucko-Haas also claims that although she made reasonable inquiries into properties within the city limits in the region of Truman College, the property values there were beyond her means to purchase. Amend. Compl. ¶ 27.

3

In August 2005, Boyd sent Hucko-Haas a letter scheduling an August 26, 2005 pre-disciplinary hearing to address Huck-Haas' failure to comply with Board Rule 3.7's residency requirement. Amend. Compl. ¶ 28. Hucko-Hass replied via a memorandum in which she again requested a waiver of the residency requirement and further requested an interactive accommodation process. Amend. Compl. ¶ 29. The hearing, at which Hucko-Haas was represented by counsel, limited itself to inquiring whether Hucko-Haas resided within Chicago city limits: Hucko-Haas' counsel was allegedly precluded from asking questions or presenting evidence of Hucko-Haas' attempts to obtain an accommodation. Amend. Compl. ¶ 30. That same day, Boyd sent Hucko-Haas a letter placing Hucko-Haas on administrative leave and informing her that Boyd would recommend her termination to the City Colleges Board of Trustees. Amend. Compl. ¶ 31.

On September 8, 2005, the Board of Trustees met. Hucko-Haas' counsel was also present at the meeting, but Hucko-Haas' termination was allegedly not discussed in either open or executive session of the meeting, nor is it reflected in the minutes of the meeting. Amend. Compl. ¶¶ 32, 33. Nevertheless, on September 13, 2005, the Vice Chancellor of Human Resources and Staff Development of City Colleges sent Hucko-Haas a letter, informing her that the Board had adopted Boyd's recommendation to terminate her employment as of September 8, 2005. Amend. Compl. ¶ 34. Attached to the letter was a set of allegedly modified minutes indicating that the Board had made such an adoption. A letter from Hucko-Haas to Tyree, requesting reconsideration, was responded to with a refusal. Amend. Compl. ¶¶ 34-37.

Consequently, on June 30, 2006 Hucko-Haas timely filed a discrimination charge against City Colleges with the Equal Employment Opportunity Commission ("EEOC").

4

The EEOC sent Hucko-Haas, via certified mail, a "right to sue" letter that arrived at her local post office on October 20, 2006. Pl.'s Decl. ¶ 13. On that date, Hucko-Haas alleges, she was out of state and her mail carrier signed for the certified letter, despite the fact that he was not authorized to do so. *Id.* Hucko-Haas claims that she did not receive the letter until at least October 30 when she returned from her trip to Missouri, where she was helping to care for an ailing relative. Pl.'s Decl. ¶ 17. During the ten days she was gone, Hucko-Haas claims that her mail was being held for her by the Evergreen Park Post Office. Pl.'s Decl. ¶ 11. Hucko-Haas subsequently filed the instant case with the court on January 25, 2007. Presently before the court is City Colleges' motion to dismiss Hucko-Hass' claims.

## II. ANALYSIS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Equal Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint "must describe the claim in sufficient detail to give the defendant 'fair notice of what the … claim is and the grounds upon which it rests' … [and] its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Concentra*, 496 F.3d at 776 (quoting *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964, 1973 n.14 (2007)).

When considering a dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept as true all well-pleaded factual

5

allegations and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). In considering such a motion, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Id.*; *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

City Colleges advances three arguments in support of its motion to dismiss Hucko-Haas' suit: (1) Hucko-Haas' suit is barred by the statutory 90-day limitation period; (2) Hucko-Haas waived her right to claim a violation of the ADA with respect to the residency requirement; and (3) Count IV (retaliation in violation of the ADA) should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The court now addresses each of these arguments in turn.

**A. Hucko-Haas' Suit is Not Time-Barred by the Limitations Period**.

Under the ADA, a plaintiff is required to file her suit within 90 days from the date the EEOC gives notice of the right to sue. 42 U.S.C. § 12117(a); *Houston v. Sidley & Austin*, 185 F.3d 837, 838 (7th Cir. 1999). "The time limit is not flexible, even for *pro se* litigants, and a one-day delay is fatal." *Davis v. Browner,* 113 F.Supp.2d 1223, 1225 (N.D. Ill. 2000). The Seventh Circuit has held that the 90-day limitations period begins to run when the claimant receives actual notice of her right to sue. *Houston*, 185 F.3d at 839 (citing *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 532 n.11 (7th Cir. 1993). However, the actual notice rule does not apply to plaintiffs who fail to receive timely notice through their own fault. *St. Louis v. Alverno College*, 744 F.3d 1314, 1316-17 (7th Cir. 1984).

6

City Colleges argues that Hucko-Haas received notice, and that the limitations period began to run, on the date the EEOC letter arrived at the post office, October 20, 2006. City Colleges contends that the fact that Hucko-Haas was out of town on the date that the letter arrived at the post office does not rise to a level that justifies equitable tolling of the statutory period, and cites a Fifth Circuit case, *Espinoza v. Missouri Pacific Railroad Co.*, in support of its argument. 754 F.2d 1247, 1249 (5th Cir. 1985). However, City Colleges ignores the very clear Seventh Circuit law on this point: the issue is not whether Hucko-Haas is entitled to equitable tolling of the statutory limitations period; rather, it is precisely when that period began to run. And, according to the Seventh Circuit, the limitations period began to run when Hucko-Haas received actual notice of the EEOC's letter. *Houston*, 185 F.3d at 839

Upon Hucko-Haas' return from Missouri on October 30, 2006, she retrieved her mail from the post office and, at that moment, received actual notice of the EEOC's ruling, unless she was at fault for not retrieving it when it was delivered ten days earlier. Courts in this circuit have held that plaintiffs are at fault, and therefore barred by the limitations period, if they did not receive their right to sue letter (and consequently failed to meet the ADA's 90-day deadline) because they: failed to register their change of address with the EEOC as required, *Alverno College*, 744 F.3d at 1316-17; *Saunders v. American Warehousing Services, Inc.*, No. 02 C 7650, 2003 WL 21266652, at *2 (N.D. Ill. May 30, 2003); were allegedly ill and staying with a relative, but still able to work at a location two and a half miles distant from home, *Johnson v. Spiegel, Inc.*, No. 02 C 0680, 2002 WL 1880137, at *3 (N.D.Ill. August 15, 2002); traveled extensively and irresponsibly failed to check their mail for more than six weeks, *Bobbitt v. Freeman Cos.*,

7

268 F.3d 535, 539 (7th Cir. 2001); or failed to acquire the right-to-sue letter from her mailbox before the Postal Service returned the letter to the EEOC. *E.g., Houston*, 185 F.3d at 839; *Ungeran v. Commonwealth Edison,* No. 00 C 5312, 2001 WL 1035181, at *2 (N.D. Ill. Sept.7, 2001); *Jones v. Motorola,* No. 00 C 6439, 2001 WL 864273, at *5 (N.D. Ill. July 30, 2001).

In the instant case, Hucko-Haas had no *a priori* reason to believe that the EEOC letter would arrive during the relatively brief ten-day interval in which she was out of state, and she had responsibly arranged to have her mail held for her at the local branch office of the post office. Pl.'s Decl. ¶ 11. The EEOC letter was sent by certified mail. Upon the letter's arrival at the Evergreen Park post office, Hucko-Haas (had she been home) would have received a notice from the post office stating that she must pick up the letter by a certain date; otherwise it would be returned to sender. However, her mail carrier improperly signed for the letter as a courtesy to Hucko-Haas[1], and so instead of being returned to the EEOC as undelivered, it languished, along with the rest of Hucko-Haas' mail, at the post office until her return on October 30th. Pl.'s Decl. ¶ 14. Although well-intentioned, the letter carrier's signing of the receipt led to the erroneous inference that the letter had been received by Hucko-Haas ten days earlier than it actually was; it also prevented the letter from being returned to the EEOC.

When Hucko-Haas picked up her mail, including the EEOC right to sue letter, upon her return from Missouri on October 30th, she received actual notice of her right to sue, and the statutory limitations clock began to run upon that date. *See Houston*, 185 F.3d at 839. Hucko-Haas had 90 days from the date upon which she received actual notice in which to file her suit. Her suit was filed within the 90-day period prescribed by

---

[1] The mail carrier allegedly was aware of Hucko-Haas' disability. Pl.'s Decl. ¶ 14.

the statute. Therefore, City College's argument that Hucko-Haas' claim is barred by the statutory limitations period fails.

**B. Hucko-Haas Did Not Waive Her Right to Contest the Residency Requirement under the ADA.**

City Colleges next contends that, under the terms of the Agreement, Hucko-Haas waived any claims she might have under the ADA, and that, after the one year waiver expired, she promised to move to within City limits as part of her agreement to follow City Colleges' policies as well as the provisions of the then-current collective bargaining agreement between City Colleges and The Cook County College Teachers Union Local 1600 ("Union Local 1600"). City Colleges argues that in return for the "consideration" of $20,000, the one-year residency waiver, and reinstatement, Hucko-Haas agreed to abide by the Board Rules, and to move to within the city limits. Finally, City Colleges argues that, by signing the Agreement, Hucko-Haas agreed to waive not only the claims arising from the previous suit, but also all future ADA claims arising from employment actions.

Hucko-Haas counters with the argument that the language of the Agreement does not constitute a waiver of any future ADA claims against City Colleges arising after the prior suit, nor did she explicitly promise to not seek future accommodation of her disability from City Colleges. Hucko-Haas contends that the Agreement addresses only subsequent claims arising out of the employment decisions that are referenced in the prior suit, and that claims arising from any subsequent employment actions were not waived.

The court has carefully reviewed the Agreement between Hucko-Haas and City Colleges and finds that it does not support defendant's argument that, under the Agreement, Hucko-Haas waived all future ADA claims against City Colleges.

9

Waivers and releases of claims under the ADA are valid if they are knowing and voluntary. *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 10 (1st Cir. 1997). The ADA clearly encourages private resolution of employment disputes: it requires that employers attempt to make reasonable accommodations of disabled individuals and that the EEOC attempt to resolve disputes informally. *Rivera-Flores*, 112 F.3d at12. Hucko-Haas has not alleged that she did not sign the Agreement in a knowing and voluntary manner.

However, paragraph 5 of the Agreement explicitly contains a release in which Hucko-Haas:

> [A]cknowledges and agrees that any right to relief which she sought or could have sought in this Lawsuit shall be satisfied upon her execution of this agreement, and that this Agreement resolves and subsumes all claims based on any conduct by City Colleges through the date of this Agreement, including …."

Settlement Agreement ¶ 5.

Moreover, paragraph 7 of the Agreement, entitled "Covenant Not to Sue" states in part that: "[Hucko-] Haas further warrants that she will not initiate any such claims in the future based in whole or in part upon events occurring to the present date." Settlement Agreement ¶ 7.

It is evident from the plain language of the Agreement that, under its terms, Hucko-Haas agreed to waive, *inter alia*, her ADA claims for those acts upon which the prior suit were predicated, *viz.*, failure to make reasonable accommodations for City College building access that would have given Hucko-Haas sufficient time to complete her tenure project, and discriminating against her by failing to grant her tenure. However, the waiver in the Agreement cannot be construed as prospective against any

10

and all future ADA claims arising from actions committed subsequent to the termination of the prior suit. In the instant case, those employment actions committed by City Colleges that form the basis of this suit occurred *after* the actions which gave rise to the previous suit: Hucko-Haas was terminated after her one year residency waiver expired.[2]

Nor is the court convinced by City Colleges' attempt to portray the Agreement as a contract by which Hucko-Haas accepted consideration in the form of renewed employment, a one-year waiver, and $20,000 in exchange for a promise to move into the city and waive all future ADA claims with respect to the residency requirement. The terms of the Agreement are explicit in stating that the consideration accepted by Hucko-Haas was in exchange for terminating the suit and foregoing all future claims arising out of the employment actions that gave rise to the prior suit.[3] Hucko-Haas agreed to abide by City Colleges' policies and collective bargaining agreement, but that did not provide City Colleges with a shield against all future ADA actions based on actions subsequent to the prior suit, including failing to accommodate Hucko-Haas' disabilities as required by the ADA.

The claims alleged in Hucko-Haas' amended complaint relate to events occurring after the Agreement was signed and the previous case was terminated. The terms of the Agreement apply only to the employment actions giving rise to the prior suit. At this stage of the proceedings, Hucko-Haas has alleged sufficiently a claim not waived by the

---

[2] The residency requirement of Board Rule 3.7 formed no part of Hucko-Haas' complaint in the prior suit. The court does note the presence of the one-year waiver of the residency requirement in the Agreement settling the prior suit. At this early stage of the proceedings, the court cannot determine whether there are sufficient factual grounds establishing that the residency requirement waiver arose directly out of the original claims in the prior suit to grant City Colleges' motion to dismiss upon this point.

[3] The Settlement Agreement states explicitly that the $20,000 "shall be allocated to cover damages [Hucko-] Haas claims for pain and suffering as alleged in the Action." Thus it cannot realistically be interpreted as "consideration" for a future promise to move into the city limits. Likewise with the other terms of the Agreement.

Agreement and her claim survives City Colleges' motion to dismiss pursuant to Rule 12(b)(6).

## C. City Colleges Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1).

Finally, City Colleges moves to dismiss Count IV (retaliation in violation of the ADA) for lack of subject matter jurisdiction. Specifically, City Colleges claims that because Hucko-Haas did not specifically allege an act of recrimination in her EEOC complaint, she has failed to exhaust her administrative remedies and the court has therefore no jurisdiction to hear that count.

A party's failure to exhaust his administrative remedies is an affirmative defense. *Salas v. Wisconsin Dep't of Corrections,* 493 F.3d 913, 921-22 (7th Cir. 2007); *Miller v. United Parcel Service, Inc.*, No. 1:07-cv-298-SEB-WTL, 2008 WL 151842, at *4 (S.D. Ind. Jan. 15, 2008). However, a complaint may not be dismissed for merely failing to rebut an affirmative defense; "dismissal is only appropriate if a plaintiff pleads herself [or himself] out of court by alleging facts that affirmatively establish the defense." *Waldron v. Dugan,* No. 07 C 286, 2007 WL 4365358, at *5 (N.D. Ill. Dec. 13, 2007) (citing *Hollander v. Brown,* 457 F.3d 688, 691 n.1 (7th Cir. 2006). Moreover, "EEOC charges should be construed with utmost liberality because they are usually filed *pro se* by uninformed complainants unfamiliar with the legal terminology behind the claims which they make." *Binion v. Metro. Pier and Exposition Auth.,* 163 F.R.D. 517, 528 (N.D. Ill. 1995); *see also Johnson v. G.A.T.X. Logistics, Inc.*, No. 00 C 3265, 2001 WL 1568883, at *3 (N.D. Ill. Dec. 06, 2001).

For Hucko-Haas to be deemed to have exhausted her administrative remedies, her claims in the complaint must be within the scope of the charges she filed with the EEOC.

*Miller*, 2008 WL 151842, at *4; *Conner v. Illinois Dep't of Natural Resources,* 413 F.3d 675, 680 (7th Cir. 2005). "[A] claim in a civil action need not be a replica of a claim described in the charge, but there must be 'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Vela v. Village of Sauk Village,* 218 F.3d 661, 664 (7th Cir. 2000) (quoting *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994)). In order to be reasonably related, "the EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." *Cheek,* 31 F.3d at 501.

Hucko-Haas has not pleaded herself out of court. Although she did not check the box for "retaliation" on the EEOC charging form, she included facts that could have reasonably indicated that she believed that her termination was an act of retaliation by City Colleges. Specifically, she mentioned the prior ADA suit against the same employer in her response to the EEOC form's question regarding whether she believed that her termination was related to her filing a prior antidiscrimination suit. Furthermore, it is undisputed that City Colleges believed that retaliation was an element of her complaint.[4]

Based upon these facts, a retaliation claim based upon Hucko-Haas' termination is reasonably related to her EEOC charge, or could at least be reasonably expected to grow out of an EEOC investigation of the allegations contained in the EEOC charge. The court therefore finds, at this early pleading stage, that there is a sufficient nexus between the

---

[4] In City Colleges' "Position Statement," received by the EEOC on July 31, 2006, City Colleges requested that: "the EEOC finds that this charge of discrimination and/or retaliation be dismissed in its entirety."

13

facts alleged in Hucko-Haas' complaint and the facts alleged in her EEOC charge to defeat City Colleges' motion to dismiss.

### III. CONCLUSION

For the reasons set forth above, City Colleges' motion to dismiss Hucko-Haas' amended complaint is denied.

ENTER:

                                                  /s/
                                      JOAN B. GOTTSCHALL
                                      United States District Judge

DATED: February 22, 2008